IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIAZ AVIATION CORPORATION D/B/A
BORINQUEN AIR,

Plaintiffs,

v.

AIRPORT AVIATION SERVICES, INC.;
EDWIN SANTANA DE LA ROSA; JOSE
ALGARIN; RAFAEL MATOS;

Defendants.

CIVIL NO. 09-1583 (CVR)

## OPINION AND ORDER

## INTRODUCTION

Plaintiff Díaz Aviation Corporation (hereafter "Díaz Aviation") filed a Verified Amended Complaint against defendants Airport Aviation Corp., José Algarín, Rafael Matos and Edwin Santana De La Rosa (hereafter "co-defendant Santana"). (Docket No. 121).[1]

On October 7, 2011, plaintiff Díaz Aviation filed a Motion for Summary Judgment. (Docket No. 264). The corresponding statement of uncontested issues and attachment were also submitted entitled Supplemental Motion for Summary Judgment. (Docket No. 265).

On same date, defendants Airport Aviation, José Algarín, Rafael Matos and Santana also filed a Joint Motion for Summary Judgment and their statement of uncontested facts. (Docket Nos. 266 and 267). Thereafter, the parties filed their respective responses to the opposing party's request for summary disposition. (Docket Nos. 269, 270 and 273).

---

[1] Co-defendants Puerto Rico Ports Authority, (hereafter "Ports Authority"), Federico Sosa Román, Alvaro Pilar, Arnaldo Deleo, Edgar Sierra, Eric Gracia and Fernando Bonilla were also included in the Amended Complaint but were dismissed as per Opinion and Order issued on July 27, 2010, Partial Judgment, and Order of September 3, 2010. (Docket Nos. 188, 191 and 201 ).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ."

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 3

Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment."  Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

Insofar as cross-motion for summary judgment pending in this case, these are to be individually determined.  The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with Rule 56 standard.  *See* Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §2720, at 335-36 (3d ed. 1998).  However, in the present case the documentary evidence relates to the same issues and is intermingled as to the nature of the claims and upon reference and adoption made by the parties in their motions and responses to opposing party's motion.  As such, it results in judicial economy and congruity to examine the relevant and corresponding findings of fact in just one report and recommendation.[2]

## LEGAL DISCUSSION

### I.  Plaintiff Díaz Aviation's Motion for Summary Judgment.

Plaintiff Díaz Aviation submits there is no genuine issue of fact for which it is entitled to judgment as to the events described in the Amended Complaint.  Díaz Aviation's initial

---

[2]   Cross motions for summary judgment neither alter the basic Rule 56 standard nor warrant the grant of summary judgment *per se*.  Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

argument is a conspiracy by defendants to destroy its business upon, among others, being evicted from the premises leased from the Ports Authority at the Luis Muñoz Marín International Airport (hereafter "airport") so that defendants could take away and benefit from its customers in the sale of jet fuel. Plaintiff Díaz Aviation states it has prevailed in the state courts on the eviction action. Defendants herein are further charged in the Amended Complaint and referred as grounds for summary judgment with having manipulated the price of jet fuel, the main product sold to the Armed Forces of the United States, below the price offered by plaintiff Díaz Aviation and having obtained an alleged contract of exclusivity in regards to jet fuel. Moreover, plaintiff submits that, even with defendants' non-exclusive contract in effect, the Armed Forces continued to call on plaintiff Díaz Aviation for the servicing of fuel, which defendants hindered and obstructed by availing themselves through an alliance with the Ports Authority to throw out plaintiff's servicing trucks from the airport facilities and misrepresenting in the state courts the exclusivity of defendants' contract with the Armed Forces. Accordingly, by interfering with the operations of plaintiff Díaz Aviation's business and operation at airport facilities in the sale of jet fuel and the ensuing damages, defendants have incurred in a violation of the Sherman Act, which is the action now pending before this federal court. Title 15, United States Code, Section 1.[3]

---

[3] Plaintiff Díaz Aviation has also included in the Amended Complaint a general tort action against defendants as a supplemental claim. (P.R. Civil Code, Secs. 1802 and 1803).

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 5

Defendants filed a joint Opposition to Plaintiff's Motion Requesting Summary Judgment addressing the conspiracy arguments and indicating plaintiff Díaz Aviation failed to meet its burden for lack of admissible evidence in support of its Sherman Act claim.  It is also argued plaintiff Díaz Aviation failed to submit a proper separate statement of material facts as required by Local Rule 56(c).[4]

Defendants' opposition deals mainly with their denial of having partaken the decision of the Ports Authority to evict plaintiff Díaz Aviation from the airport premises; having manipulated the price of aviation jet fuel; asserting to be holding an exclusive contract for the sale of jet fuel to the Armed Forces;  and finally considering as irrelevant whether plaintiff Díaz Aviation may sell in the open market.  Defendants also deny the Ports Authority announced to defendants the arrival of military flights to assist in having a heads up in servicing them.

Regarding the provisions of Section 1 of the Sherman Act, which defendants aver plaintiff Díaz Aviation fails to meet, same prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. There are two (2) prerequisites for a successful Sherman Act, Section 1 claim. First, there must be concerted action. Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761, 104 S.Ct. 1464 (1984); Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc., 332 F.3d 6, 12 (1st Cir. 2003). Second, the

---

[4] Plaintiff Díaz Aviation did submit a document entitled Motion in Support of our Request for Summary Judgment and entered in this Court's CM/ECF as "Supplemental Motion for Summary Judgment", which itemizes the exhibits and attachments in support of its factual contentions.  Except for lack of specific page citation of some of the deposition pages included as exhibits, the remaining documentation, which need be referred by page number, is  deem in compliance with the relevant rule. (Docket No. 265).

actors' agreement must involve either restrictions that are per se illegal or restraints of trade that fail scrutiny under the rule of reason. Monsanto, 465 U.S. at 761, 104 S.Ct. 1464; Podiatrist Ass'n, 332 F.3d at 12. *See* Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11 (1st Cir. 2004).

The Court of Appeals for the First Circuit held sufficient a complaint which alleged a conspiracy to restrain the interstate trade of the plaintiff and to destroy its trade. *See* Mitchell Woodbury Corp. v. Albert Pick-Barth Co., 41 F.2d 148, 151 (1st Cir. 1930); *see also* Atlantic Heel Co. v. Alied Heel Co., 284 F.2d 879 (1st Cir. 1960) (complaint which alleged that defendants conspired to restrain plaintiff in its interstate business and to destroy plaintiff in its business, by improper competition, to the detriment of the public, stated a claim under the Sherman Act). A conspiracy to eliminate selling competition, necessarily restricting a plaintiff's liberty to engage in business, is unlawful restraint of interstate trade and commerce under the Sherman Antitrust Act. Title 15, United States Code, Sections 1-7, 15. *See* Ballard Oil Terminal Corp. v. Mexican Petroleum Corp., 28 F.2d 91 (1st Cir. 1928).

Defendants submit that for plaintiff to establish a violation of the Sherman Act as presented in the Amended Complaint, it must prove: (1) concerted action between two or more separate parties; and (2) such action unreasonably restrains trade.   Podiatrist Association, Inc. v. La Cruz Azul de Puerto Rico, 332 F.3d at 12.

Defendants argue plaintiff's antitrust claims are based on innuendo and speculation, there being no evidence of the required concerted action between Ports Authority and defendants to impede or hinder plaintiff from selling aviation fuel to the Armed Forces or

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 7

participating in the eviction of plaintiff Díaz Aviation from the airport premises.  Insofar as

the sale of jet fuel plaintiff Díaz Aviation has acknowledged having no contract to provide

fuel services to the Armed Forces since 2002, while defendant Airport Aviation indeed

holds a valid contract since March of 2009.

According to defendants, plaintiff's claim of concerted actions, to wit, Ports

Authority throwing out plaintiff's truck out of the runway allegedly to protect defendants'

sale of fuel to the Armed Forces, was in fact due to plaintiff Díaz Aviation not having a valid

fueling permit and interfering with a Fixed Base Operator, defendant Airport Aviation,

which was considered by the Ports Authority as a hazard created by plaintiff.

As to the eviction process as a concerted action, plaintiff has not established who

commenced the eviction and the proffered reason of the existence of bribes by means of

political contributions to a party by one co-defendant has no evidence in support.  In fact,

the claim as to defendants' political contributions over the applicable legal limits, which is

not denied, was not only unknown to those who would have taken action as to plaintiff Díaz

Aviation, but  more so, many of the actions plaintiff has complained were made after the

opposing party had been elected as the governing authority, for which the alleged concerted

action between defendants and government authorities and/or the Ports Authority is not

substantiated by the evidence.

### A.  Plaintiff Díaz-Aviation's Uncontested Facts:

Plaintiff Díaz Aviation's lack of citation as to deposition pages at Exhibit 2, of Docket

No. 264, and Exhibits 2, of Docket No. 265, is considered not to comply with Local Rule 56

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 8

and, as such, is not taken into consideration to elucidate this motion.[5]  See also former footnote 2 as to defendants' objection on Local Rule 56.

Plaintiff Díaz Aviation submitted as statements in support of its request for summary judgment no controversy as to material facts for having been subject of an eviction in state court of its leased facilities at the airport premises which it attributes as a conspiracy and/or concerted action between defendants and the Ports Authority to take away its customers and its operation of selling jet fuel to the Armed Forces.  (Docket No.  264, Plaintiff's ¶¶1, 2; Exhibits 1-3; state eviction complaint; judgment state appeal; state Supreme Court ruling, respectively).

Plaintiff Díaz Aviation further submits that, while the eviction was in progress and finally adjudicated for plaintiff in state court, defendants manipulated the price of Jet A fuel, the main product sold by plaintiff to the Armed Forces and obtained a contract with the U.S. government for the sale of fuel to the Armed Forces by offering to sell the same product $1.05 per gallon below plaintiff's price. (Plaintiff's ¶3; Exhibits 4, 5, 6; letter to Airport Aviation by Defense Logistics Agency of 3-23-2009; *id.*, of 9-15-2009; Lee Dvonch's declaration).

Plaintiff Díaz Aviation sells its product in the open market and Armed Forces called upon plaintiff for service, including fuels. (Plaintiff's ¶4).

In 2009, based on cheaper prices offered by defendant Airport Aviation, the Department of Defense granted said defendant a formal contract to supply fuel to the

---

[5]  Exhibit 2, at both instances is a 62 pages document of Ms. Wanda Vélez-Román's deposition.

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 9

Armed Forces.  Notwithstanding the contract, units of the Armed Forces continued to call upon plaintiff Díaz Aviation for fuel and services for the contract is not exclusive and each air vessel captain has the authority to purchase fuel as it deems proper.  (Plaintiff's ¶¶5, 7; Exhibit 7, state hearing 11-23-2009, statement attorney for defendant Diego Guillermo DeGuzman Vendrell, pp. 19, 23).

Ports Authority notified defendant Airport Aviation of all Air Force units flights for the business to come into the hands of defendant. The alliance between Ports Authority and defendant has almost liquidated plaintiff, affecting the gallons of fuel sold in the different years.  (Plaintiff's ¶6; Exhibit 8, total gallons sold years 2009, 2010 and up to 8-31-11; Exhibit 9, Luis Varona's statement, re: fuel sold by defendant Armed Forces March-December 2009, January-December 2010, January-April 2011).

At the state hearing, the presiding judge questioned the standing of defendant Airport Aviation to decide for the Ports Authority. (Plaintiff's ¶8; Exhibit 7, p. 20).[6]

Defendant Santana questioned Ports Authority for having issued a fueling permit on behalf of American Airlines.  (Plaintiff's ¶10; Exhibit 10, letter 5-13-2005).

Plaintiff Díaz Aviation submits defendants' intervention at a state injunction between plaintiff Díaz Aviation and Ports Authority, and defendants questioning permits issued by Ports Authority is circumstantial evidence of defendants' concerted actions and how they

---

[6]  To be faithful and consonant with the proposed documentation in support, the discussion of the state judge at the hearing was more akin to  the issue of the injunction sought before the state court regarding the license –fueling permits– issued to Díaz Aviation and to Airport Aviation in competition for the sale of jet fuel by the Ports Authority.

have hindered and impeded plaintiff on the sale of fuel at the airport to eliminate plaintiff's business in the sale of jet fuel. (Plaintiff's ¶11; Exhibit 7, pp. 23-26).

Airport Manager Arnaldo Deleo's e-mail to plaintiff Díaz Aviation indicated having thrown out plaintiff's trucks from airport premises for interfering with a contract between defendant Airport Aviation and the U.S. government. (Plaintiff's ¶12; Exhibit 11, Deleo's e-mail 10-23-2009).

Mr. Arnaldo Deleo, named Director of Aviation for the Ports Authority, presented a different version than the one in the e-mail of October 23, 2009 as to the reasons for throwing out plaintiff's trucks and removing its decals from airport premises in a subsequent deposition submitting, stating it was to avoid violence. (Plaintiff's ¶18; Exhibit 19, Deleo's depo., pp 8-11, 27-29).

Plaintiff Díaz Aviation submits that in 2005 those official defendants, whose cases were dismissed in this action under Eleventh Amendment immunity and other legal theories, as members of then Popular Democratic Party's administration, had been persuaded by defendant Santana's illegal political contributions. These political contributions were made public in the criminal trial held in this federal court as to Criminal No. 08-297 (PJB) as to then governor Anibal Acevedo-Vilá. These defendants participated in acts related to intervening with plaintiff's eviction from airport premises. (Plaintiff's ¶14; Exhibit 12, Indictment in 08-297 and transcript of proceedings; Exhibit 13, testimony of Santana in Acevedo-Vila's trial).

At said criminal proceedings, beside the name of former governor, and through the testimony presented under oath, came out the name of Miguel Nazario Franco, one of the directors of Santana's companies.  (Plaintiff's ¶15, Exhibits 14, 15, Santana's testimony in Acevedo-Vila's trial).

Plaintiff Díaz Aviation obtained a new customer for the sale of aviation fuel, Roblex Aviation.  Defendant Airport Aviation offered said customer, through defendant Rafael Matos, twenty (.20) cents less than whatever price was quoted by plaintiff.  (Plaintiff's ¶19;Exhibit 19, Deleo's e-mail 10-25-2009; Exhibit 20, Roberto Rodríguez' statement, President of Roblex).

The acts of Edgar Sierra and Eric Gracia, Ports Authority officers, of January 20, 2010, intervening with plaintiff have been described in their depositions and in Sixto Díaz Saldaña's statement. (Plaintiff's ¶20; Exhibits 22, Sierra's depo., pp. 8-10, 11-13, 15-16).[7]

Ports Authority security officer Jorge Pellot tried to intimidate plaintiff's employees and its president on May 4, 2009,  as to the exclusive contract by defendant Airport Aviation to fuel United States Air Force. (Plaintiff's ¶22; Exhibit 23, Darvin Matos Correa's statement; Exhibit 24, José Pérez' statement).

Defendant Airport Aviation filed a complaint with the Puerto Rico Police against plaintiff for providing fuel to military aircraft.  (Plaintiff's ¶23; Exhibit 25, P.R. Police complaint).

---

[7] Having one C-130 airplane removed from plaintiff's area as improperly parked, while another plane, same size and dimensions had been allowed in the area for thirty years.

On March 8, 2010, a Ports Authority operation inspector intervene with an aircraft being fueled by plaintiff, stating to the pilot he could get a cheaper parking space at the facilities of defendant, indicating he was following orders from Eric Gracia, his superior at the Ports Authority.  (Plaintiff's ¶24; Exhibit 26).

Plaintiff has also submitted supplemental statements insofar as the open market sales, loss of sales, and total number of fuel gallons moved by plaintiff and defendants since the acts described resulted in intervention with its business in aviation fuel for military planes and others and the resulting economic losses and damages caused by defendants' acts. (Docket No. 265).

**B.  Defendants' Contested Facts:**

Defendants address plaintiff Díaz Aviation's uncontested facts in their joint Opposition to Plaintiff's Motion Requesting Summary Judgment (Docket No. 273)claiming mostly that they did not participate in the Ports Authority's decision to evict plaintiff Díaz Aviation from the airport premises.  (Exhibit 1, José Algarín's statement, ¶¶7, 8; Exhibit 2, Rafael Matos' statement ¶¶5, 6; Exhibit 3, Edwin Santana's statement ¶¶11-16).

Defendants similarly deny having manipulated the price of Jet A Fuel.  (Deft's Uncontested ¶2 referring to Docket No. 266, ¶¶13, 15; Exhibit 4, Contract Airport Aviation and Defense Logistics Agency; Exhibit 1, Algarín's statement ¶¶ 10-11; Exhibit 2, Matos' statement ¶8). [8]

---

[8]  Defendants have referred to their own Motion for Summary Judgment and Uncontested Issues therein to negate plaintiff's uncontested facts.  Reason for which the cross-motions are considered commingled and difficult to resolve on individually.  However, the legal contention that cross-motions for summary judgmen are to be addressed separately, was followed.

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 13

Defendants state they hold a contract as the sole and exclusive provider of aviation fluid to the Armed Forces. (Defts' ¶4; Docket No. 266 ¶15).

Defendants deny the Ports Authority would announce arrival of military flights. (Defts' ¶5; Docket No. 266 ¶20; Exhibit 8, Gracia's depo., pp. 26-28; Exhibit 9, Sierra's depo., p. 17).

Defendants consider plaintiff's statement ¶¶7-11, regarding arguments raised at the state hearing, as irrelevant.  (Defts' ¶6).

Defendants qualify plaintiff's uncontested ¶¶12-13, as to the removal of plaintiff's trucks from airport premises by Ports Authority referring to the lack of a valid fuel permit and interfering with defendant as a Fixed Base Operator, which created a safety hazard. (Deft's ¶7; Docket No. 266 ¶¶19-20; Exhibit 6, Daleo's depo., p. 11, 32).

Defendants deny plaintiff's uncontested ¶14 as to the decision to evict same from airport leased premises. (Defts' ¶8; Docket No. 266 ¶11; Exhibit 3, Santana's statement ¶¶11-16).

Defendants consider irrelevant plaintiff's uncontested ¶15 as to influence exerted due to political contributions.  In addition, defendants submit many of the actions plaintiff Díaz Aviation has complained took place during a different political administration than the one during which contributions were granted. (Defts' ¶9).

Similarly defendants deny plaintiff's uncontested ¶¶17 and 18, for the removal of plaintiff's truck from airport premises was attributed to Ports Authority's determination plaintiff did not have a valid fueling permit and was interfering with the operations of

defendant Airport Aviation, a Fixed Base Operator, creating a safety hazard. (Defts' ¶10; Docket No. 266 ¶¶19-20; Exhibit 6, Daleo's depo, pp. 11, 32).

Defendants consider irrelevant plaintiff's uncontested ¶19 regarding hindering services to another company Roblex for no price discrimination claim has been filed against Airport Aviation as to this. (Defts' ¶11).

Defendants qualify plaintiff's uncontested ¶¶20 and 21 as to one occasion where a military plane was ordered removed from plaintiff's facilities because the tail of the plane encroached on an adjacent taxiway. (Defts' ¶12; Docket No. 266 ¶20; Exhibit 8, Gracia's depo., p. 19; Exhibit 9, Sierras' depo., p. 9).

### C.    Analysis:

Defendants' opposition which mostly denies through statements of defendants and other sworn testimony the statements presented by plaintiff in support of its request for summary judgment has now raised credibility issues which make improper the summary disposition as to the Amended Complaint, insofar as the Sherman Act claim, as well as the general tort supplemental jurisdiction claim.

Regardless that defendants have also presented the exclusivity of their contract to sell aviation fuel to the Armed Forces and being the only fuel supplier to be allowed at the airport facilities under contract with the U.S. Government, they have failed to discuss or address the open market concept raised by plaintiff Díaz Aviation or to rebut the contention the captain of an aircraft is the final decision maker as to the purchase of fuel for the plane. Neither have defendants contested the issue as to plaintiff Díaz Aviation being hindered

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 15

from offering services to Roblex Aviation, an entity seemly not of the U.S. government. Whether plaintiff filed or not a discrimination claim as to this event, which defendants state has been dismissed in another civil case before this court, goes to the merit of the legal action not to the events having transpired as a pattern of defendants to hinder and limit plaintiff Díaz Aviation from offering or selling aviation fuel.[9]

Plaintiff Díaz Aviation has not established as genuine issues of uncontested fact that defendants herein, through concerted action with the Ports Authority, hinder and impede plaintiff's business at airport premises with the purpose of restraining trade of jet fuel, since defendants have raised in opposition contested issues that present the need of credibility determination. Thus, summary judgment cannot be adjudicated on the Amended Complaint for plaintiff for there are significant issues of material fact in controversy and credibility issues as to intent, although seemly there exists circumstantial evidence leading to the first prong of establishing a concerted action under the Sherman Act. The resulting second prong of restraining of trade, rests upon evidence as to other instances and a pattern of obstructions for the sale of aviation fuel and is further addressed in defendants' motion for summary judgment to avoid being repetitious, but is incorporated herein, as contested issues of material fact also preclude summary judgment for plaintiff.

Consonant with above discussion, plaintiff Díaz Aviation's Motion for Summary Judgment is DENIED.

---

[9] Reference is made to Civil No. 10-1915 (GAG) wherein Díaz Aviation sued defendant Airport Aviation, Esso Standard Oil and Total Petroleum, which was dismissed under Fed.R.Civ.P. 12(b)(6) on January 18, 2011.

## II.  Defendants' Motion for Summary Judgment.

Defendants Airport Aviation, José Algarín, Rafael Matos and Edwin Santana filed a joint Motion for Summary Judgment and Supporting Memorandum of Law (Docket No. 267) requesting summary disposition in that plaintiff Díaz Aviation's complaint has failed to meet the elements of an antitrust case.  Mainly, it is defendants' contention the antitrust claim requires not merely and injury to competitor, such as herein plaintiff, but to competition, for injury is to be analyzed from the point of view of the consumer, that is, the legal provisions are not to regulate unfair competition, but rather to avoid an unreasonable restriction of trade, for which plaintiff's Sherman Act claim should be considered deficient.

Defendants further aver the remaining claim, if the Sherman Act claim is dismissed, is but a general tort  not to be adjudicated in this federal court for lack of jurisdiction.

### A.  Defendants' Uncontested Facts.

Co-defendant Airport Aviation is a Fixed Base Operator at the airport, with the corresponding permits and authorizations of the Ports Authority.  (Defts' ¶1; Exhibit 1, Algarín's statement ¶3; Exhibit 2, Matos' statement ¶3).

Co-defendant Algarín is the President of Airport Aviation since 1995.  (Defts' ¶2; Exhibit 1, ¶2).

Co-defendant Matos is the Operation Manager of Airport Aviation since 1984. (Defts' ¶3; Exhibit 2, ¶2).

Co-defendant Santana was a shareholder and director of Airport Aviation until March of 2008 when he ceased all relationship, association, contract, intervention or participation.  (Defts' ¶4; Exhibit 1, ¶4; Exhibit 3, Santana's statement ¶¶2-4, 18-20).

Co-defendant Santana has no personal knowledge about the contract between Airport Aviation and the Armed Forces to fuel military planes at the airport or any interaction with plaintiff in regard to said contract or rights granted thereunder. (Defts' ¶5; Exhibit 3, ¶¶5-6).

Co-defendant Santana testified during the month of March of 2008 in the criminal case held in federal court against former governor Acevedo-Vilá, Criminal Nos. 08-36, 08-297, as to political contributions to the Popular Democratic Party deemed in excess of applicable legal limits.  (Defts' ¶6; Exhibit 3, ¶8).

Co-defendant Santana has never been charged in any state or federal court with any criminal offense, nor with bribery, extortion or against exercise of government function or undertakings as alleged in the Amended Complaint.  (Defts' ¶7; Exhibit 3, ¶9).

Santana has never admitted as to bribes for the Popular Democratic Party.  Santana has admitted to donations and/or contributions in excess of then applicable legal limits through payments to an advertising agency.  These contributions are not related to Ports Authority's supervision, administration, control or policing of plaintiff Díaz Aviation's fueling operations at the airport.  (Defts' ¶8; Exhibit 3, ¶10).

Santana never informed any Ports Authority's officer of his political contributions in excess of then applicable legal limits.  (Defts' ¶9; Exhibit 3, ¶11).

Defendants have never relied on Santana's political contributions to procure, obtain or encourage any specific action from the Ports Authority to the detriment of plaintiff Airport Aviation. (Defts' ¶10; Exhibit 1, Algarín's statement ¶5; Exhibit 2, Matos' statement ¶4; Exhibit 3, Santana's statement ¶11).

Defendants never requested nor entered into any agreement with Ports Authority or any of its officers to evict plaintiff Díaz Aviation from its leased premises at the airport. (Defts' ¶11; Exhibit 1, Algarín's statement ¶¶7-8; Exhibit 2, Matos' statement ¶¶5-6; Exhibit 3, Santana's statement ¶¶11-16, 23).

Defendants never entered into any agreement or understanding with Ports Authority to restrain trade of aviation fueling operations at the airport. (Defts' ¶12; Exhibit 1, Algarín's statement ¶9; Exhibit 2, Matos' statement ¶7; Exhibit 3, Santana's statement ¶¶12-14, 23).

Defendant Airport Aviation executed an agreement on March 2009, which runs until March 31, 2013, with Defense Logistics Agency by which it became the sole contracted provider of jet-A fuel to military aircraft at the airport. (Defts' ¶¶13-15; Exhibit 4, Contract; Exhibit 1, Algarín's statement ¶¶10-11; Exhibit 2, Matos' statement ¶2; Exhibit 5, Lee Dvonch's statement ¶3).

Since 2002, plaintiff Díaz Aviation does not have a contract to provide plane services to military aircraft at the airport. (Defts' ¶16; Exhibit 1, Algarín's statement ¶12; Exhibit 2, Matos' statement ¶9; Exhibit 5, Lee Dvonch's statement ¶5).

Since defendant Airport Aviation secured above contract for services at the airport, plaintiff Díaz Aviation engaged in the practice of rushing its fuel trucks to block fueling efforts by defendant to military aircrafts at the airport. (Defts' ¶17; Exhibit 1, ¶13; Exhibit 2, ¶10).

Plaintiff's conduct created a safety and security hazard at the airport. (Defts' ¶18; Exhibit 1, ¶14; Exhibit 2, ¶11; Exhibit 6, Deleo's depo., pp. 27, 31-32).

For safety concerns, Algarín requested Ports Authority's intervention. (Defts' ¶19; Exhibit 1, ¶15). Algarín sent e-mail to Gil Rosario on October 23, 2009, informing of an incident between defendant Airport Aviation and plaintiff's employees as to fueling of military plane that led to the filing of a complaint with the P.R. Police. (Exhibit 7, e-mail October 23, 2009; Exhibit 8, Gracia's depo., pp. 10-13; Exhibit 6, Deleos' depo., pp. 10-11, 27, 29, 39).

On October of 2009, Ports Authority's official removed the authorization decals from plaintiff's trucks and denied access to airport runway for its fuel permits had expired. (Defts' ¶20; Exhibit 6, pp. 8, 24, 27-28, 34).

Arnaldo Deleo, Erick Gracia and Edgar Sierra, all Ports Authority's employees and witness to some of the events in the Amended Complaint on or after 2009, testified that co-defendant Santana had nothing to do with these events. (Defts' ¶21; Exhibit 6, p. 46; Exhibit 8, Gracia's depo., pp. 28-29; Exhibit 9, Sierra's depo., pp. 18-19).

Insofar as defendants' uncontested statements 21 (a) to (d), these are considered legal conclusions and not statements of uncontested facts. Defendants submit plaintiff Díaz

Aviation lacks the admissible evidence to support the elements of a cause of action under the Sherman Act as to a concerted action between defendants and said actions were to restrain trade of aviation fluid.

**B.  Plaintiff's Opposition.**

Plaintiff Díaz Aviation submits in its opposition to defendants' request for summary judgment reference to the exhibits submitted with its own motion for summary judgment and with the statements in the Verified Amended Complaint.  (Docket Nos. 269, 265 and 121).

Plaintiff stands by its sworn statement that it was defendant Matos the one who placed his trucks at the fueling points of an aircraft which had already decided to buy its fuel from plaintiff.  The captain of the aircraft instructed defendant to get his trucks out for which Matos called Ports Authority officer Deleo to force plaintiff's truck out.

Plaintiff Díaz Aviation submits that defendants' action to manipulate the price of fuel is shown through the offer to Roblex Aviation, Inc., to sell them fuel at .20 cents less than whatever plaintiff would offer.  (Docket No. 264, Exhibit 18, Rodríguez' statement).

Attorney for defendants attempted to participate in a state injunction hearing between plaintiff and the Ports Authority as to removal of plaintiff's trucks from airport facilities, while Ports Authority did not oppose to intervention.

As to defendants' uncontested issues in their summary judgment, plaintiff Díaz Aviation accepts the possibility that co-defendant Santana was a shareholder of Airport Aviation and had sold his interest or part thereof to said co-defendant. It is also accepted

that Santana may not have been involved in the details of acquisition of military fueling. (Plaintiff's ¶¶2-3, Docket No. 270). Although plaintiff thereafter refers that Santana may not withdraw from a conspiracy by selling his shares, no conspiracy has been presented in the Amended Complaint for the Sherman Act claim deals with a concerted action and plaintiff has not rebutted or oppose defendants' uncontested that Santana had not participated with the aviation fuel events.

Plaintiff denies defendants' averment as to lacking a fueling permit, stating having a permanent one since 1998. (Plaintiff's ¶9).

As to the Puerto Rico Police complaints, plaintiff Díaz Aviation submits there were two instances defendants attempted to file a criminal complaint against plaintiff. One was for selling fuel to a military aircraft in violation of their contract, which was not a criminal offense and did not prosper. The other was filed by plaintiff's employee Ernesto Ayala Martínez for breach of peace by the same individual who had filed the first complaint, Michael Santiago. (Plaintiff's ¶17).

Plaintiff Díaz Aviation further contests the averments of co-defendants Algarín and Matos as resting on credibility issues.

### C. Analysis.

Defendants' request for summary judgment and plaintiff's opposition, raise herein contested issues of material facts which may not be adjudicated at this stage, except for co-defendant Santana. The uncontested fact is that Santana is not a participant of the events dealing with military fueling and is not an officer of co-defendant Airport Aviation since

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 22

2005.  As such, there is no genuine issue of material fact in controversy as to Santana regarding any concerted action with Ports Authority.  Thus, it is undisputed co-defendant Santana is entitled to summary disposition and **summary judgment is GRANTED as to co-defendant Edwin Santana.**

Plaintiff Díaz Aviation has raised in the Verified Complaint and through its uncontested statements, having suffered injury by the anti-competitive and monopolistic practices of defendant Airport Aviation and its officers and/or employees in regards to the sale of aviation fuel in the airport.

Section 2 of the Sherman Act states:

§2. Every person who shall monopolize, o attempt to monopolize, or combine or conspire with any other person or persons, to monopolize, or with foreign nations, monopolize any part of the trade or commence among the several States, or with foreign nations ..." 15 U.S.C. §2 (1982)[10]

The Supreme Court has defined monopolistic power as the power to control prices or exclude competition.  United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698 (1966); United States v. E.I. du Pont De Nemours & Co., 351 U.S. 377, 391, 76 S.Ct. 994 (1956).

In order to have standing to bring a claim under the Sherman Act, the substantial reduction in sales by the hindered competition within the market of aviation fuel grants plaintiff, at least *prima facie*, standing to bring this Sherman Act claim.  Notwithstanding above, exclusionary conduct, as element of monopolization claim under the Sherman Act does not include behavior which poses no unreasonable threat to consumer welfare but is

---

[10]   Although the Sherman Act is a criminal statute, Section 4 of the Clayton Act provides for civil remedies for "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws, which include the Sherman Act, the Clayton Act and the Wilson Tariff Act).  Clayton Act, 15 U.S.C. §§12(a).

merely manifestation of healthy competition, absence of competition, or natural monopoly. Even a monopolist may rebut a *prima facie* evidence of exclusionary conduct by establishing valid business justification for its conduct. Data Geneal Corp., v. Grumman Systems Support Corp., 36 F.3d 1147 (1st Cir. 1994) (abrogated on other grounds of copyright registration requirement, Elsevier, Inc. v. Muchnick, 130 S.Ct. 1237 (2010)).

Plaintiff also needs to show other elements of such Sherman Act claim, to wit, show defendants entered into a contract, agreement or combination in restraint of trade or attempted monopolization claims under Sections 1 or 2 of the Sherman Anti-Trust Act. This can be inferred from finding of bad faith. CVD, Inc. v Raytheon Co., 769 F.2d 842 (1st Cir. 1985).

Turning to the instant case, bad faith may be shown by evidence of interference with plaintiff's business such as described in the Verified Amended Complaint and the attachment to summary judgment, such as actions of forcing removal of airplanes being serviced from plaintiff's ramp, the filing of complaints with the Puerto Rico Police against plaintiff's employees, e-mails sent to Ports Authority to hinder plaintiff from carrying out business at airport facilities and removal of decals from plaintiff's trucks, as well as by defendants attempting to participate in state injunction hearing between plaintiff Díaz Aviation and the Ports Authority. Such actions may be considered circumstantial evidence of this element of a Sherman Act claim, as well as of the general tort claim, which is subject of evaluation by the trier of facts and not at summary judgment stage.

A Sherman claim should also address the conduct proscribed, that is, every "contract, combination, or conspiracy", that is, concerted or joint actions between two or more parties. Section 1, Sherman Act.  Similarly, defendants have attributed plaintiff's predicament as to the sale of aviation fuel to the contract between defendant Airport Aviation and the Defense Logistics for the fueling of airplanes to the Armed Forces. A plaintiff in antitrust suit is not barred merely because factors other than defendants' unlawful conduct may have contributed to its injury. In addition, plaintiff has raised and established by sworn statement other interventions of defendants not related to military aircraft, such as the sale to Roblex Aviation below any price plaintiff would have offered.  Furthermore, the reasons submitted by Ports Authority to intervene with plaintiff's operation, from its attempt to evict plaintiff from airport premises although lease payments have been paid in advance and plaintiff having obtained injunctive relief from state court, the removal of decals from plaintiff's trucks and ordering plaintiff's trucks out of airport premises, refusing to allow airplane parked at plaintiff's facilities for servicing, having its officers intervene with plaintiff to benefit defendant Airport Aviation, acting in its official capacity upon e-mail complaints of defendant Airport Aviation,  are actions subject of contradictory evidence as to their intent and purpose, thus resting on credibility issues that may not be resolved at this summary judgment stage.

Defendants have also argued that public injury, not only injury to plaintiff's business, is also a necessary element of a Sherman Act claim.  It has been suggested that public injury must be alleged in private civil actions filed under the Sherman Act. Ford Motor Co. v.

Webster's Auto Sales, Inc., 361 F.2d 874 (1st Cir. 1966).  However, by reversing and remanding the action in Klor's, Inc. v. Broadway-Hale Stores, Inc., 255 F.2d 214 (9th Cir. 1958), *cert. granted*, 358 U.S. 809, 79 s.Ct. 23 (1958), public injury was found from the act of antitrust and the damages suffered by a plaintiff.  *See* Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct.705 (1959) (the complaint stated a valid concerted action to monopolize claim under Sherman Act).  The Highest Court therein indicated to the contrary of public injury requirement itself.  The Supreme Court stated that an antitrust complaint need only be tested under the Sherman's general prohibition on unreasonable restraints of trade, and, if it meets requirements that plaintiff has suffered injury, it will be sufficient since Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public, and has provided sanctions allowing private enforcement of antitrust laws by aggrieved party.[11]

Pursuant to the above discussed, defendants' request for summary judgment, except as to co-defendant Santana, is DENIED.

## III.  Supplemental Jurisdiction over State Law Tort Claim.

Defendants have acknowledged in their own motion for summary judgment that upon disposing of the Sherman Act federal claim plaintiff's sole remaining claim would be but a general tort under the laws of the Commonwealth of Puerto Rico.  (Defts' Summary Judgment, Docket No. 267, p. 1).  Defendants thus consider this federal court would  lack

---

[11]  A group of businessmen acted in concert to deprive a single merchant of goods he needs to compete effectively and even though such action by the businessmen does not result in a reduction of opportunities for customers to buy in a competitive market, case was remanded to lower court for trial.

subject matter jurisdiction to entertain a general tort claim under state law, resting probably on the dismissal of all federal claims, which is not applicable in this case as above indicated. (*Id.*, p. 2).

Even if all federal claims had been dismissed, at this stage of the proceedings, a general tort under state laws may be adjudicated in this federal forum for it would be unreasonable to decline jurisdiction when the discovery of the case has been concluded, depositions and translation of documents into the English language have been prepared and incurred in significant expenses and the only issue to remain is trial date. *See* Redondo Const. Corp. v. Izquierdo, ___ F.3d ___, 2011 WL 5041745 (1st Cir. 2011) (court exceeded its discretion in declining to exercise jurisdiction on state pendent claims).[12] Thus, summary judgment as to state pendent claims as requested by defendants is not appropriate and this court will not decline to exercise jurisdiction.

## CONCLUSION

In view of the foregoing, plaintiff Díaz Aviation's Motions for Summary Judgment is DENIED. (Docket Nos. 264 and 265). Defendants' Joint Motion for Summary Judgment is GRANTED in part and DENIED in part as follows: GRANTED in its entirety as to co-defendant Edwin Santana and DENIED as to Sherman Act claim and supplemental claim on the remaining defendants Airport Aviation, José Algarín and Rafael Matos. (Docket No. 267).

---

[12] Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996) (approved exercise of district court's supplemental jurisdiction because the litigation had matured well beyond its nascent stages, discovery had closed, summary judgment record was complete, the federal and state claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction.

Díaz Aviation Corp. v. P.R. Ports Authority, et al
Civil No. 09-1583(CVR)
Opinion and Order
Page No. 27

_____

Partial judgment shall be entered dismissing the complaint as to co-defendant Edwin Santana consonant with the above.  Furthermore, partial judgment shall also be entered dismissing the complaint as to co-defendant Fernando Bonilla and Federico Sosa-Román as previously ruled in Docket Nos. 201 and 202.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 7th day of November of 2011.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE